# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JOHN D. POLLOCK, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. 4:24-cv-669 |
| § | Judge Mazzant |
| AMERICAN ENDOWMENT § | |
| FOUNDATION, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant American Endowment Foundation's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. #16). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This is a breach of contract dispute. On July 9, 2013, Herbert K. Bennett ("Bennett") established a donor advised fund[1] ("DAF") with Defendant American Endowment Foundation (Dkt. #13 at ¶ 15). To establish the DAF, Bennett completed and submitted Defendant's Donor Advised Fund Application (the "Agreement") (*See* Dkt. #16-1). Bennett named himself as the "Donor/Advisor," which entitled him to advise Defendant on matters concerning grants, investments, and fund disposition issues (Dkt. #16-1 at p. 2). The Agreement also allowed Bennett to list another person as a Donor/Advisor, which he did not do (*See* Dkt. #16-1 at p. 2). The

---

[1] A DAF is "a charitable giving vehicle that allows donors to take a present-year income tax deduction, while distributing the funds to the charity at a later time." *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1052 (9th Cir. 2022). "A key feature of a DAF is that the donor has, or reasonably expects to have, advisory privileges with respect to the distribution or investment of amounts held in such fund." *Id.* (citation modified).

Agreement also allowed him to name a successor advisor that would succeed him as an advisor to the DAF (Dkt. #16-1 at p. 3). Bennett did not list anyone as a successor advisor (*See* Dkt. #16-1 at p. 3). Further, the Agreement provided for other fund disposition options in case Bennett did not want to name a successor advisor, but wanted an alternative distribution of the DAF after he died (*See* Dkt. #16-1 at p. 4). Yet again, Bennett did not complete this section (*See* Dkt. #16-1 at p. 4).[2] Bennett, however, did avail himself of the investment section. This section permitted him to recommend a financial professional to work with Defendant concerning the investments of the DAF, but this individual did not have advisory privileges of a Donor/Advisor (Dkt. #16-1 at p. 5). There, Bennett listed Plaintiff John Pollock (Dkt. #16-1 at p. 5). Ultimately, Bennett made an initial contribution of $1,000,000.00 to the DAF and designated it to support charities with a Jewish worldview (Dkt. #13 at ¶ 15). Bennett signed the agreement on July 9, 2013 (Dkt. #16-1 at p. 5). According to Plaintiff, on July 18, 2013, Bennett executed a letter (the "Letter") that stated: "I, Herbert K. Bennett, authorize my Financial Advisor, John Pollock, to make grants on my behalf. If you have questions regarding this matter please contact John Pollock . . . ." (Dkt. #17-1 at p. 14). Bennett signed and dated the Letter (Dkt. #17-1 at p. 14).

Eventually, as we all must at one time or another, Bennett passed away (Dkt. #13 at ¶ 16). Bennett's will was probated and Plaintiff was named independent executor of Bennett's estate (Dkt. #13 at ¶ 16). As independent executor, Plaintiff transferred assets from Bennett's estate to the DAF and by 2023, it grew to approximately $5,000,000.00 (Dkt. #13 at ¶¶ 18–19). According to Plaintiff, Defendant informed him that he could not serve as the financial advisor and

---

[2] The Court notes that there is writing and pen marks on the page, but the section was left incomplete (*See* Dkt. #16-1 at p. 4).

Donor/Advisor for the DAF, so Plaintiff stepped down as financial advisor (Dkt. #13 at ¶ 17). Plaintiff avers that Defendant refuses to consider his grant recommendations on Bennett's behalf to the DAF (Dkt. #13 at ¶ 19). Accordingly, Plaintiff sued.

On June 26, 2024, Plaintiff filed suit in State Court (Dkt. #1-1 at p. 2). Defendant removed the matter on July 23, 2024, based on the Court's diversity jurisdiction (Dkt. #1). On October 21, 2024, Defendant filed this Motion (Dkt. #16). Plaintiff filed his Response on November 4, 2024 (Dkt. #17). Defendant filed its Amended Reply on November 11, 2024 (Dkt. #20). The Motion is ripe for adjudication.

## LEGAL STANDARD

### I.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court does not have statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1)

and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

II.     **Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. Rule 12(b)(1)

Defendant argues that as "neither a signatory to nor an assignee of the contract in question, Plaintiff lacks standing to bring suit against" Defendant (Dkt. #16 at ¶ 1). So, according to Defendant, the Court should dismiss this case because it lacks subject-matter jurisdiction. This argument is wrong because Defendant conflates contractual standing with Article III standing. "Contractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (quoting *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020)). That is because "Article III standing speaks to the power of a court to adjudicate a controversy" whereas "contractual

5

standing speaks to a party's right to relief for breach of contract." *Id.* (citation modified) Thus, Defendant's Motion should not be analyzed under the Rule 12(b)(1) framework. Rather, Defendant's contractual standing argument must be analyzed under the Rule 12(b)(6) framework. Thus, the Court denies Defendant's Rule 12(b)(1) Motion.

## II.    Rule 12(b)(6)

Plaintiff fails to state a plausible claim for relief because he lacks contractual standing to bring this suit. Because amendment would be futile, the Court must dismiss his claims with prejudice. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003); *see also Jackson v. Great American Ins. Co.*, No. 23-CV-4304, 2023 WL 8805659, at *1 n.1 (E.D. La. Dec. 20, 2023) (quoting *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) ("An amendment would be futile if even the 'amended complaint would fail to state a claim upon which relief could be granted.'").

### A.    The Parol Evidence Rule

The parol evidence rule does not preclude the Letter. Since the Court is sitting in diversity, it must apply Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Texas law, "[c]ourts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). "Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract." *Id.* (citation modified). But the "parol evidence rule excludes only prior and contemporaneous negotiations." *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 656 (Tex. App.—Dallas 2015, no pet.) (citing *Garcia v. Karam*, 276 S.W.2d 255, 258 (Tex. 1955)). It "does not apply to agreements made subsequent to the written agreement." *Id.* (collecting cases).

Defendant argues that the Court should not consider the Letter because it is only being offered to "contradict the terms of the Agreement, and therefore, the letter is barred by the parol evidence rule" (Dkt. #16 at ¶ 17). Plaintiff disagrees. Plaintiff argues that the Letter is a subsequent authorization by Bennett and the Court can consider it (Dkt. #17 at pp. 8–9). Plaintiff's argument carries the day because the Letter can be offered to show that it changed the Agreement between Bennett and Defendant. *See Mortgage Co. of Am. v. McCord*, 466 S.W.2d 868, 871 Tex. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) ("Extrinsic evidence may always be offered to show a new agreement or that an existing written contract has been changed, waived, or abrogated in whole or in part."). Since the Letter can be considered, the Court must determine whether the Letter *did* modify the Agreement.

### B.  Modification of the Agreement

The Letter did not modify the Agreement between Bennett and Defendant, so Plaintiff never attained the right to make grant recommendations. Therefore, Plaintiff lacks standing under the contract to bring this suit. The Letter did not modify the Agreement. "A 'modification' of a contract is a change in the original agreement that inserts new or different elements into the details of the contract, but leaves its general purpose and effect the same." *Osprey Funding, LLC, v. J3S Enters., LLC*, No. H-13-1172, 2015 WL 136564, at *7 (S.D. Tex. Jan. 9, 2015) (citing *Enserch Corp. v. Rebich*, 925 SW.2d 75 (Tex. App.—Tyler 1996, writ dism'd by agreement)). "A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). "The party asserting a modification must prove two things: (1) notice of the change, and (2) acceptance of the change." *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 349–50 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Here, Plaintiff does not allege facts that indicate Defendant accepted the change to the Agreement.

Plaintiff only provides the Letter and a factual allegation that does not tilt the scale in his favor (Dkt. #17 at pp. 7–9; Dkt. #13 at ¶ 17). Plaintiff alleges that in "March of 2020, Noel Juglion, the Chief investment Oversight Officer for [Defendant], informed Pollack that he could not serve as *both* the financial advisor and donor advisor for the [DAF]" (Dkt. #13 at ¶ 17). Plaintiff claims that he then stepped down as financial advisor and seems to suggest that by stepping down he could then serve as donor advisor to the fund (*See* Dkt. #13 at ¶ 17). While Plaintiff may have taken this action because he hoped to serve as Donor/Advisor, his action does not prove that Defendant accepted the modification in the Letter—that Plaintiff could make grant recommendations on Bennett's behalf. In fact, Defendant's staunch refusal to ever "accept any of [Plaintiff's] grant recommendations" bolsters this conclusion (Dkt. #13 at ¶ 21). Accordingly, the Court finds that Plaintiff has not alleged facts that Defendant accepted the change to the Agreement.

### C.    Contractual Standing

Because Plaintiff has not alleged facts that Defendant accepted the change to the Agreement, Plaintiff lacks contractual standing to bring this suit. Usually, "the benefits and burdens of a contract belong solely to the contracting parties, and no person can sue upon a contract except he be a party or in privity with it." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (citation modified). Here, Plaintiff is not a party to the contract or in privity with it. Notably, the Agreement permitted Bennett to name a successor advisor upon his death, which he chose not to do by leaving the section blank (*See* Dkt. #17-1 at p. 10) ("If you do not wish to name a Successor Advisor, skip to Other Fund Disposition Options."). And, the Letter does not constitute a modification of the Agreement because Defendant never accepted the Change. Accordingly, Plaintiff lacks contractual standing to bring this suit.

In conclusion, Plaintiff lacks contractual standing to bring this suit; therefore, he cannot state a plausible claim for relief. Furthermore, because amendment would be futile, the Court dismisses his claims with prejudice.

## CONCLUSION

It is therefore **ORDERED** that Defendant American Endowment Foundation's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. #16) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff John D. Pollock's claims are hereby **DISMISSED with prejudice**.

The Clerk is directed to close this case.

**IT IS SO ORDERED.**

SIGNED this 23rd day of July, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE